OPINION
{¶ 1} Appellant Bridget Davis appeals the decision of the Knox County Court of Common Pleas, Juvenile Division, which terminated shared parenting and named Appellee Roger Moran as the residential parent of the parties' child. The relevant facts leading to this appeal are as follows.
 {¶ 2} On August 30, 2002, appellee legally acknowledged paternity of Roger L. Moran, Jr., who had been born just a few days prior. On August 1, 2003, appellant filed a complaint to establish child support for Roger, Jr. By judgment entry filed August 12, 2003, appellee was ordered to pay support, and appellant was designated residential parent and legal custodian.
 {¶ 3} On May 3, 2004, appellee filed a motion for allocation of parental rights and responsibilities. He therein requested that the court designate him the residential parent or, in the alternative, grant an order of shared parenting. The court subsequently ordered the parties to participate in mediation. Pursuant to the parties' mediation agreement, a shared parenting plan was signed by both sides and approved by the court on October 19, 2004.
 {¶ 4} On November 22, 2004, appellee filed a motion to show cause against appellant and a request to terminate shared parenting. On January 7, 2005, the court ordered home studies regarding both parties. On May 2, 2005, a hearing was conducted before a magistrate. On July 8, 2005, the magistrate issued a decision granting appellee's motion and designating him as residential parent and legal custodian. Appellant was ordered to pay child support and was awarded non-residential parenting time.
 {¶ 5} On August 25, 2005, appellant, with leave of court, filed objections to the decision of the magistrate. Following a hearing, the trial court issued a judgment entry overruling all of the objections and adopting the decision of the magistrate.
 {¶ 6} Appellant filed a notice of appeal on October 26, 2005. She herein raises the following sole Assignment of Error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN GRANTING FATHER'S MOTION TO TERMINATE SHARED PARENTING AND TO DESIGNATE FATHER RESIDENTIAL PARENT AND LEGAL CUSTODIAN."
 I. {¶ 8} In her sole Assignment of Error, appellant contends the trial court erred in terminating shared parenting and naming appellee as residential parent of Roger, Jr. We disagree.
 Best Interest Issues/Evidence of Bruising {¶ 9} Appellant first maintains the trial court failed to consider the statutory "best interest" factors in reaching its decision. In determining the best interest of a child in matters addressing parental rights and responsibilities, R.C.3109.04(F)(1) directs that "* * * the court shall consider all relevant factors, including, but not limited to:
 {¶ 10} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 11} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 12} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 13} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 14} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 15} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 16} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 17} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 18} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 19} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 20} Appellant specifically charges that the trial court failed to consider the following factors: (1) Roger Jr.'s relationship with his half-sister and appellant-mother; (2) the court-ordered home studies of both parties; and (3) appellee's failure to remain current on his child support obligation. Appellant's Brief at 6-10.
 {¶ 21} We first note there is no requirement that a trial court separately address each factor enumerated in R.C. 3109.04.In re Henthorn, Belmont App. No. 00-BA-37, 2001-Ohio-3459. Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1). Id., citing Evans v.Evans (1995), 106 Ohio App.3d 673, 677. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Accordingly, as an appellate court, we review a trial court's decision allocating parental rights and responsibilities under a standard of review of abuse of discretion. Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 22} The magistrate's decision sets forth that the court considered the factors enumerated in R.C. 3109.04(F)(1) and (F)(2). As is often the case in child custody battles, each side had widely differing accounts of some of the events addressed at trial. For example, appellee and some of his witnesses testified that appellee was repeatedly denied his parenting time as permitted under the original shared parenting plan. Tr. at 58, 126, 186. Appellant, however, admitted to denial of parenting time on just one occasion. Tr. at 33. According to appellee, appellant would also not accept telephone calls from appellee concerning visitation issues. Tr. at 75-76, 83.
 {¶ 23} The court was also troubled by the influence and interference of appellant's present boyfriend, Clint West. Although West generally denied engaging in any improper behavior, appellee's witnesses recounted several instances of West's threatening behavior during encounters related to appellee's parenting time. For example, according to appellee's mother, Donna Johnson, on one occasion, appellee was waiting to pick up Roger, Jr. when West came up to the car, told him to get his "fuckin' `hind end' out" and threatened to "beat the crap out" of appellee. Tr. at 122. West also stated during this incident that he was tired of appellee "causing trouble" over Roger, Jr., which West referred to as "his" son. Id. Bridget Collins, appellant's present girlfriend, described the incident as follows:
 {¶ 24} "I remember we were — Roger and I were sitting in my vehicle. Donna was sitting in hers. I remember Bridget Davis pulling up, went around the corner to drop her daughter off at the school. As soon as she went by, Clint West came up. He squealed his tires. He came up, slid in beside my car. I couldn't get out of my car. He was so close to my car. He almost hit my car. I remember he got out. He went over to the passenger's window, because that's where Roger was sitting. I remember him hitting my window saying, `Come out, you mother fucker. I will kill you right now.' Roger was trying to get out of the car. I didn't want him to, so I took off. I went up around the block, and Clint West was in Donna's face, and I remember he had his finger in her face yelling at her." Tr. at 143-144.
 {¶ 25} Furthermore, although challenged by appellant as unsupported by medical documentation or children's services reports, the court found that Roger, Jr. was noticed with bruises and black eyes between October 19, 2004 and April 15, 2005. The court tallied that appellee and his witnesses observed bruises on nine occasions and black eyes on five occasions. Magistrate's Decision at 2. The court also found Roger, Jr. was observed as being "unkempt" and with a diaper rash on six occasions. Id.
 {¶ 26} In reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. See Dinger v.Dinger, Stark App. No. 2001CA00039, 2001-Ohio-1386. The present case represents another situation in which both parents, as the trial judge aptly noted, "with the help of [their] significant others, spend a lot of time bickering with each other, which doesn't help [their] child." Tr., Objection Hearing, at 10. Our review of the record, however, does not indicate that the trial court failed to consider the statutory "best interest factors" or that appellate reversal of the change in residential parent status under these circumstances is warranted against the magistrate who observed the evidentiary proceedings firsthand and the judge who reviewed the Civ.R. 53 objections.
 Guardian ad Litem Issue/Magistrate's Grant of Joinder {¶ 27} Appellant next argues that the trial court should have appointed a guardian ad litem in this case, and that it was error for the magistrate to join Clint West, appellant's boyfriend, as a third-party plaintiff. However, our review of appellant's objections to the decision of the magistrate reveals that neither of these issues were therein raised. Civ.R. 53(E)(3)(d) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." See, e.g., Stamatakis v. Robinson (January 27, 1997), Stark App. No. 1996CA00303.
 {¶ 28} We therefore find these two arguments waived for purposes of appeal.
 Ineffective Assistance of Counsel {¶ 29} Appellant lastly contends her trial counsel was ineffective. We note this Court has recognized "ineffective assistance" claims in permanent custody appeals. See, e.g., Inre Utt Children, Stark App. No. 2003CA00196, 2003-Ohio-4576. However, we have not expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody. See In re Logwood, Guernsey App. No. 2004-CA-38, 2005-Ohio-3639, ¶ 26. We thus find appellant's argument without merit in this private custody dispute.
 {¶ 30} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 31} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Knox County, Ohio, is affirmed.
Wise, P.J. Hoffman, J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Knox County, Ohio, is affirmed.
Costs to appellant.