[Cite as *In re B.H.*, 2019-Ohio-1508.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF:<br>B.H. DEPENDENT CHILD | : | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
|  | : |  |
|  | : | Case No. 18CA95 |
|  | : |  |
|  | : | OPINION |

CHARACTER OF PROCEEDING: Civil apeal from the Richland County Court of Common Pleas, Juvenile Division, Case No. 2018DEP00039

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: April 22, 2019

APPEARANCES:

For-Appellee

For-Appellant

EDITH GILLILAND
Richland County Children's Services
731 Scholl Road
Mansfield, OH 44907

DARIN AVERY
105 Sturges Avenue
Mansfield, OH 44903

*Gwin, P.J.*

{¶1} Mother appeals the September 21, 2018 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, overruling her objections to the magistrate's decision.

*Facts & Procedural History*

{¶2} On February 15, 2018, Richland County Children Services Board ("RCCS") filed a complaint alleging B.H., born on March 17, 2007, is a dependent child. The complaint alleges that appellant ("Mother") has a history of substance abuse, admits to smoking marijuana, there are concerns that Mother smokes marijuana while driving with her children in the car, and that the children have access to marijuana in the home. Additionally, the complaint avers: Mother testified positive for a drug screen while at RCCS for visitation with her oldest daughter; Mother received a probation violation for possession of drugs; B.H. was exposed to domestic violence in the home between Mother and her former paramour J.W. on a regular basis; J.W. physically assaulted Mother in front of the children; and Mother has rammed J.W.'s car, resulting in a protection order that Mother continually violates. The complaint states concerns about B.H.'s father ("Father") is his status as non-custodial parent.

{¶3} Also on February 15, 2018, RCCS filed a motion for temporary custody. RCCS moved the trial court to grant temporary custody of B.H. to Father. The trial court granted the motion. On April 24, 2018, Father filed a motion for legal custody of B.H. On September 6, 2018, Mother filed a motion to return custody of the children to her.

{¶4} On May 29, 2018, the magistrate issued a written decision after the adjudicatory hearing on May 10, 2018. The magistrate noted Mother and Father waived

their trial rights and agreed B.H. is a dependent child. The magistrate found Mother's agreement was knowingly, voluntarily, and intelligently made, and accepted the agreement. The magistrate found the circumstances that necessitated the finding of dependency as to Mother include: substance abuse issues, allegations of domestic violence, illegal substances found in the home, and other personal problems. The magistrate found the circumstance that necessitated the finding of dependency as to Father is his status as the non-custodial parent. The magistrate concluded that, based upon Mother's and Father's agreements, there is clear and convincing evidence that the minor child is a dependent child pursuant to R.C. 2151.04(C).

{¶5} The magistrate held hearings on Father and Mother's motions for legal custody on July 16, 2018, August 30, 2018, and September 7, 2018.

{¶6} Jennifer Conley ("Conley") is B.H.'s caseworker. Conley stated B.H. has been with Father, is thriving, and doing well. B.H. reports to Conley she wants to remain with Father. Conley testified to concerns in Mother's home of her driving around looking for J.W. and the children finding drugs in the home. Conley stated Father once tested positive for cocaine, but it was a one-time lapse in judgment and he has not tested positive since. Mother told Conley she smokes marijuana on a regular basis and does not see an issue with it. Conley noted domestic violence issues continue between Mother and J.W. Father works full-time and gets assistance such as food stamps. Conley testified Father completed his assessments, he provides for the basic needs of the children, his home study was approved, and she has no concerns about Father being B.H.'s legal custodian.

{¶7} Conley stated the case plan for Mother includes: a second drug and alcohol assessment since Mother was not forthcoming in her first assessment about her drug

use, and providing for the basic needs of all her children. Conley reported Mother was cooperative with her. B.H. was previously placed with Father and then reunited with Mother.

{¶8} Mother stated she had a voluntary open case with RCCS when Mother reported a domestic violence incident between herself and her oldest child. Mother testified the child would not cooperate and help Mother with another child, so Mother told her to stand at the wall. According to Mother, the child continued to "run her mouth" and when Mother bent down to smack the child, the child turned around and punched Mother in the eye, so Mother called the police. Mother then reported a domestic violence incident with J.W., and felt RCCS took her children over that incident. Mother believes RCCS was ok with her smoking marijuana as long as she kept it locked up and away from her children, because they knew she smoked it and tested positive, but did not take her children away. Mother testified she has now stopped using marijuana.

{¶9} Mother is visiting with B.H. at Mother's parent's house every other week-end. Conley stated Mother has not yet moved to unsupervised visitation because Mother was charged with possession of a crack pipe and RCCS did not feel comfortable moving forward with unsupervised visitation.

{¶10} Mother testified she believes it is in the best interest of B.H. for Mother to have custody because she has been taking care of her for a long time. Mother denied any history of domestic violence. Mother told RCCS and the police that J.W. hit her in the mouth in December of 2017. RCCS submitted Exhibit C., a nolle prosequi judgment entry from the Mansfield Municipal Court in the criminal case filed against J.W. after Mother stated he hit her in the mouth, stating "victim now claims she lied. State cannot

proceed without sole witness." Mother stated she "did not have any further comments on the matter" and exercised her Fifth Amendment rights. Mother stated the police have been involved with her and J.W. three times. In 2017, Mother was accused of ramming J.W.'s vehicle. Mother stated she caught J.W. with his girlfriend and he was trying to play both of them, so she pursued them in the vehicle and then went home. Mother stated she was charged with criminal damaging and criminal trespass in 2017.

{¶11} Mother testified she completed her assessments and is going to counseling. Mother does not know her diagnosis from the mental health assessment. Mother has concerns about Father having legal custody, such as his positive cocaine screen and marijuana screen, and the mental health of his family and his girlfriend's family. Mother testified the children miss her and want to come home.

{¶12} Mother stated B.H. had been removed from her home in 2010 and was with Father for about a year into 2011. B.H. was removed again after a sexual allegation in 2012 and lived with Father for a year until 2013. B.H. has currently been with Father for five months. Mother sees B.H. every other week-end.

{¶13} Mother is currently not getting child support, but was getting child support from Father when B.H. lived with her of about $386 per month.

{¶14} When asked about police involvement with her and the children, Mother testified the police have been called "a lot," including for the following incidents: child endangerment with regards to an allegation she left the children home alone; disorderly conduct for an allegation she left one of her children unattended in a vehicle; domestic violence with her oldest daughter; and allegations Mother injured one of the children. Mother testified she was placed on probation for criminal damaging. She was supposed

to be on probation for twelve months, but she did a month and a half of probation and decided to just go do her thirty days in jail. Mother stated she was in violation of her probation because of the drugs and paraphernalia found in her home.

{¶15} When discussing visitation, Father stated he would support B.H. visiting Mother at her home, as long as it was just Mother at the home during the visits. RCCS opposed visitation at Mother's home due to the fact that in August of 2017, there was a significant amount of drugs and drug paraphernalia found in Mother's bedroom.

{¶16} Father testified B.H. loves Mother, but B.H. likes things the way they are and would like to live with him. B.H. described to Father "chaos" at Mother's house. Father believes Mother is still involved with J.W. Father stated B.H. is doing well at his home and enjoys the daily routine. Father would like legal custody of B.H. and wants B.H. to maintain a relationship with Mother. Father testified he thinks B.H. is better off with him than Mother because he offers a more consistent type of living. Father cited as examples of the chaos in Mother's home as chasing down her boyfriend's truck on the road and the children having to fend for themselves. Father also testified B.H. knew where Mother kept her marijuana.

{¶17} Iesha Davis of Family Life Counseling stated she is a case manager for Mother. Davis believes Mother is unemployed, but is having no other issues with her case plan. Davis does not know what Mother's diagnosis is or what she is dealing with in counseling.

{¶18} The Guardian ad Litem for B.H. stated the drama and poor decision-making of Mother has affected B.H. She recommends legal custody of B.H. be given to Father because it is in B.H.'s best interest.

**{¶19}** The magistrate issued a written decision on September 10, 2018. The magistrate noted B.H. was adjudicated dependent on May 29, 2018 and the underlying family problems as to Mother were substance abuse issues, allegations of domestic violence, and illegal substances in the home. The magistrate stated B.H. was removed from Mother's care in 2010 for one year and again removed from her care in 2012 for one year. Further, that B.H. has been in the temporary custody of Father since February 21, 2018 and Father is able and willing to provide for and care for the children on an ongoing basis. The magistrate found that while the children love Mother, both expressed a desire to remain in Father's custody. Additionally, that: RCCS supports Father's motion for legal custody and the guardian ad litem recommends that legal custody to Father is in the best interest of the children.

**{¶20}** The magistrate found: RCCS made reasonable efforts to avoid the removal of the children from Mother's home; RCCS made reasonable efforts to make it possible for the children to return home by the development of a case plan, monitoring case plan services, assisting in parenting time arrangements, and other efforts; it is in the best interest of the children to be placed in the custody of Father; and protective supervision is not needed. The magistrate awarded legal custody of B.H. to Father. The magistrate found Mother's parenting time with the children would be every other week-end with no supervision, and any additional parenting time as the parties agree upon.

**{¶21}** Mother filed objections to the magistrate's decision on September 17, 2018. Mother objected and argued: there is no finding as to whether the issues were remedied; the magistrate did not address whether Mother completed her case plan; Father tested

positive for cocaine; and there are no findings of specific issues, facts, or circumstances that required legal custody to be changed.

**{¶22}** The trial court issued a judgment entry on September 21, 2018 overruling appellant's objections to the magistrate's decision. The trial court noted that no transcript of the evidence submitted to the magistrate was submitted to the trial court for review. Thus, the trial court found it did not have a record to review factual findings. Further, that, based upon the limited record before the trial court, the magistrate's decision was supported by the evidence and applicable law. The trial court found it was in the best interest of the minor child that the child be placed in the legal custody of Father. The trial court adopted and approved the magistrate's decision.

**{¶23}** Mother appeals the September 21, 2018 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, and assigns the following as error:

**{¶24}** "I. THE COURT ERRED IN FINDING THAT IT WAS IN THE BEST INTEREST OF THE MINOR CHILD TO GRANT LEGAL CUSTODY TO FATHER BECAUSE SUCH A FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND BECAUSE MOTHER WAS COMPLYING WITH THE CASE PLAN AND HAD ADDRESSED THE PROBLEMS NECESSITATING THE COURT'S FINDING OF DEPENDENCY.

**{¶25}** "II. MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE SHE ADMITTED DEPENDENCY WITHOUT FACTS SUPPORTING SUCH A FINDING.

**{¶26}** "III. MOTHER RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BECAUSE SHE ADMITTED DEPENDENCY WITHOUT AN AGREED DISPOSITION."

I.

{¶27} In her first assignment of error, Mother argues the trial court erred and abused its discretion in finding it was in the best interest of B.H. to grant Father legal custody.

{¶28} Before we address Mother's first assignment of error, we note Mother did not file a transcript of the magistrate's hearing for the trial court's review. Mother filed a transcript of the magistrate's hearing in this Court with her appeal.

{¶29} Civil Rule 53(D) states, in pertinent part:

(3) Magistrate's decision; objections to magistrate's decision

* * *

(b) Objections to magistrate's decision

* * *

(iii) Objection to magistrate's factual finding; transcript or affidavit. An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available. With leave of court, alternative technology or manner of reviewing the relevant evidence may be considered. The objecting party shall file the transcript or affidavit with the court within thirty days after filing objections unless the court extends the time in writing for preparation of the transcript or other good cause. If a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections.

**{¶30}** This Court has held, "where an appellant fails to provide a transcript of the original hearing before the magistrate for the trial court's review, the magistrate's findings of fact are considered established and may not be attacked on appeal." *J.S. v. T.S.*, 5th Dist. Knox No. 16CA18, 2017-Ohio-1042, citing *Murray v. Murray*, 5th Dist. Richland No. 15CA02, 2015-Ohio-3726; *Doane v. Doane*, 5th Dist. Tuscarawas No. 1999AP090054, 2000 WL 502819 (Apr. 11, 2000). Without a transcript, the trial court is free to adopt the magistrate's decision, unless it determines there is an "error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

**{¶31}** Accordingly, we review appellant's assignment of error only to analyze whether the trial court abused its discretion in reaching specific legal conclusions based upon the established facts. *He v. Zeng*, 5th Dist. Licking No. 2009-CA-00060, 2010-Ohio-2095.

**{¶32}** This was a grant of legal custody, not permanent custody. Legal custody does not divest parents of residual rights, privileges, and responsibilities. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. This means Mother may petition the court for a modification of custody in the future. *In the Matter of L.S. & D.S.*, 5th Dist. Holmes No. 12-CA-001, 12-CA-002, 2012-Ohio-3794.

**{¶33}** Unlike a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard of review in legal custody proceedings is preponderance of the evidence. *Id.* In this type of dispositional hearing, the focus must be on the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188.

**{¶34}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

**{¶35}** Mother argues the trial court's decision to grant legal custody to Father was against the manifest weight of the evidence because she complied with her case plan and had addressed the problems necessitating the trial court's finding of dependency. We disagree.

**{¶36}** The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, and a trial court must base its decision on the best interest of the child. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188; *In re P.S.*, 5th Dist. Stark No. 2012CA00007, 2012-Ohio-3431. Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized that "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *In re A.F.*, 9th Dist. Summit No. 24317, 2009-Ohio-333, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468.

**{¶37}** R.C. 2151.414(D) sets forth factors to be considered in making a determination regarding the best interest of the child. These factors include, but are not limited to, the following:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶38} Mother contends she has completed all her case plan requirements. However, the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. While it may be in Mother's best interest to complete the case plan, this is only one factor for a trial court to consider what is in the best interest of the child and, "in legal custody cases, trial

courts should consider all factors relevant to the best interest of the child". *In the Matter of D.P. and G.P.*, 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

**{¶39}** Where a parent has participated in his case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481.

**{¶40}** We find the determination by the trial court that legal custody to Father is in the best interest of B.H. is not against the manifest weight of the evidence and the trial court did not abuse its discretion in reaching specific legal conclusions based upon the established facts. Both the guardian ad litem of B.H. and the caseworker for B.H. believe it is in the best interest of B.H. to grant Father's motion for legal custody. B.H. loves Mother, but wants to remain with Father. B.H. is doing well with the routine at Father's house. B.H. was removed from Mother's care in 2010, 2012, and 2018. B.H. is with her sibling A.H. at Father's home.

**{¶41}** Further, though Mother contends she substantially remedied any problems leading to agency involvement, the testimony and evidence presented at the hearing do not support this conclusion. Mother's first assignment of error is overruled.

## II. & III.

**{¶42}** In her second and third assignments of error, Mother argues she received ineffective assistance of trial counsel during the proceedings leading to the trial court's decision to award legal custody of B.H. to Father.

**{¶43}** A parent has a fundamental liberty interest in the care, custody, and management of his or her child. *In re Gower/Evans Children*, 5th Dist. Tuscarawas No.

06AP060034, 2006-Ohio-5676, citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). In particular, R.C. 2151.353(A)(3) provides,

> If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition * * * Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings * * *.

{¶44} In comparison, the disposition of committing an abused, neglected, or dependent child to the permanent custody of a public children services agency or private child placing agency is addressed in R.C. 2151.353(A)(4). Thus, legal custody and permanent custody in this context are alternative dispositional choices. See *In re Fell*, 5th Dist. Guernsey No. 2004-CA-39, 2005-Ohio-2415.

{¶45} This Court has recognized "ineffective assistance" claims in permanent custody appeals. See e.g., *In re Utt Children*, 5th Dist. Stark No. 2003CA00196, 2003-Ohio-4576. However, we have not expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody. *In re Logwood*, 5th Dist. Guernsey No. 2004-CA-38, 2005-Ohio-3639; *In the Matter of L.J.W.*, 5th Dist. Ashland No. 16 COA 013, 2016-Ohio-7054.

{¶46} In this case, the matter before us did not result in an order of permanent custody to RCCS. We therefore will not further address Mother's second and third

assignments of error. Accord *In re W.A.*, 5th Dist. Muskingum No. CT2013-0002, 2013-Ohio-3444; *In the Matter of C.C.*, 5th Dist. Muskingum No. CT2017-0085, 2018-Ohio-2686.

{¶47} Based on the foregoing, Mother's assignments of error are overruled.

{¶48} The September 21, 2018 judgment entry of the Richland County Court of Common Pleas, Juvenile Division, is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur